*In re* ESTATE OF OPAL WEDEBERG, Deceased (William Pollock *et al.*, Petitioners-Appellees, v. ROCK GOERTZ *et al.*, Respondents (Darleen Burkhart *et al.*, Respondents-Appellants)).

Fourth District   No. 4—91—0483

Opinion filed March 19, 1992.

Bruce J. Biagini, of Flack, McRaven & Stephens, of Macomb, for appellant Union National Bank of Macomb.

Robert Stuart, Jr., and Emmet A. Fairfield, both of Brown, Hay & Stephens, of Springfield, for other appellants.

March & McMillan, P.C., of Macomb, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Section 4—3 of the Probate Act of 1975 (Act) requires that for a writing to be a valid will, it must be "signed by the testator or by some person in [her] presence and by [her] direction" (Ill. Rev. Stat. 1987, ch. 110½, par. 4—3). This case concerns a document admittedly handwritten by a decedent in all respects except in connection with the signature of witnesses. No contention is made that the document was signed at the request of the decedent by another person. The only possible indication that the decedent signed it appears at the top of the first page of the document where the decedent wrote the words "Opal Wedeberg's Will." We hold that under the evidence here, the proponents of this document as the last will of the decedent failed, as a matter of law, to es-

tablish that the document meets the signature requirement of section 4—3 of the Act.

Opal Wedeberg died on September 4, 1989. On September 13, 1989, two documents were filed for probate with the circuit court of Sangamon County as the last will of that decedent. One, dated March 20, 1980, purported to be the last will of decedent and a codicil thereto of that date. They were filed by Union National Bank of Macomb (Union National), named as executor, and each, admittedly, met all formal requirements for admission to probate. The other document, filed by Loren K. Robinson, was the handwritten instrument previously described. It was dated January 2, 1988. After a hearing, the court entered separate orders on September 13, 1989, which (1) admitted the 1980 document to probate; and (2) denied admission of the 1988 document. Union National was appointed executor.

On February 26, 1990, petitioners William Pollock and Mary Pollock filed a two-count petition with the circuit court. Count I was brought pursuant to section 8—2 of the Act (Ill. Rev. Stat. 1989, ch. 110½, par. 8—2) contesting denial of admission of the 1988 document to probate. Count II sought a declaration that the 1980 instrument was revoked by the 1988 one to the extent that their provisions conflicted. Various parties filed motions for summary judgment seeking to uphold or to overturn the earlier disposition of the petitions for probate. On May 7, 1991, the court entered a summary judgment in favor of petitioners, finding the 1988 instrument was the will of the decedent and predominated over any inconsistent provisions in the 1980 instrument. All other requests for summary judgment were denied. Respondents have appealed. We reverse and remand, directing entry of summary judgment finding the 1980 instrument is the sole last will of the decedent.

The purported 1988 will is a handwritten document containing four pages with writing on both the front and the back of the first three pages. It begins with the following words in longhand:

"Opal Wedeberg's Will
Dated 1-2-88"

It then contains various attempts at making gifts, some of which are vaguely stated. The back of the third sheet contains nothing except, at the bottom, the following appears in longhand:

"Witnesses:
Marcia Maisenbacher
Margaret Crabtree                          Executors:
                                           Loren K. Robinson

Power of Attorney
Marge Garrard                              Russell Garrard"

The undisputed evidence properly before the circuit court when it ruled on the motions for summary judgment showed that the signatures of Maisenbacher and Crabtree appearing under the designation "Witnesses" were their signatures, and at least all of the document appearing prior to the back of the third sheet was written by decedent. Undisputed deposition testimony of those attesting witnesses was that the decedent had told them the 1988 document was her will and asked them to be witnesses. No evidence was presented that the decedent ever told anyone that her reference to her name in the heading of the 1988 document was intended to be her signature to that instrument. Some evidence also indicated that the words "Power of Attorney" and the name "Marge Garrard" had been added to the instrument after the signing by the witnesses.

■ Under the terms of section 2—1005(c) of the Code of Civil Procedure, motions for summary judgment shall be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) Under the undisputed evidence here and the precedent we deem to be controlling, we conclude that the form of the 1988 instrument is dispositive of the case and, as we have indicated, we hold the instrument does not meet the signature requirements of section 4—3 of the Act. No Illinois decision has permitted probate of a document excusing the requirements of section 4—3 because the document was written entirely by the hand of the testator, *i.e*, a holographic will.

In *Bamberger v. Barbour* (1929), 335 Ill. 458, 458, 167 N.E. 122, 123, a purported will, admittedly in the hand of the purported testator, stated:

" 'CHICAGO *June 14-1927*

[ ]*To whom it may concern*:

[ ]I—Edwin Durand Bamberger bequeath all of my property both Real Estate and personal to my wife Lillian Dorothy Bamberger. To her also and alone I bequeath all my life Insurance of whatever kind—. She to serve as sole executrix without bond.
Witness JAMES M. NORTHCOTT
Witness BLANCHE P. McKINNIE.' " (Emphasis in original.)

The circuit court admitted the document to probate, but the supreme court reversed on appeal. The supreme court explained that whether the appearance of the name of the purported testator, written in that person's hand, in the first part of the document constitutes the signature to a will depends upon the drafter's intent which can be proved by parol

evidence. The court then found no extrinsic evidence of that intent had been shown. The court then concluded:

> "There is one well known purpose in placing the name of the testator in the exordium clause—it is by way of description. It cannot be said, therefore, that the deceased had no other purpose or intent in placing his name where it appears in this instrument than to make it his signature. The evidence discloses no statement of the deceased that the name as written by him was intended as his signature and no declaration of the deceased after the instrument was written that it was his will." *Bamberger*, 335 Ill. at 460, 167 N.E. at 123.

Nine years after the *Bamberger* decision, the supreme court decided *Hoffman v. Hoffman* (1938), 370 Ill. 176, 18 N.E.2d 209. There, a holographic document stated:

> " 'Wrote the 18th of April, 1937.
>
> [ ]I, Miss Mary E. Hoffman, I am going to write my will on this paper so if something shought [*sic*] happen to me all that belons [*sic*] to me I will to my brother Wallie S. Hoffman, the brick house[,] the furniture and *** the money I have coming if the big house will get saled [*sic*]. I want to let you know that this is my own handwriting
>
> My witness [*sic*] below
>
> > Ed Bien
> >
> > Henry Rodenberg
> >
> > Paulina Rodenberg' "

*Hoffman*, 370 Ill. at 177, 18 N.E.2d at 209.

The *Hoffman* court affirmed a circuit court order denying probate to the purported will on the basis of a lack of signature. The court cited *Bamberger*, but in *Hoffman*, unlike in *Bamberger*, evidence was presented that the decedent told the witnesses that she intended the instrument to be her will. The language 'we have quoted from *Bamberger* seems to indicate that court might have ruled differently if the purported testator there had identified the writing as her will. The *Hoffman* court stated: "[t]he decisive question is not whether the deceased *intended the instrument to be her will*, but whether she *intended the name appearing in the exordium clause to be her signature*." (Emphasis added.) (*Hoffman*, 370 Ill. at 179, 18 N.E.2d at 210.) As *Hoffman* is the later supreme court decision, its definite statement concerning the decedent's intent controls, as precedent, over any inference from the language of *Bamberger*.

The proponents of the 1988 document contend that the statements of the decedent to the two witnesses that the document was her will is sufficient to properly identify the heading which stated "Opal Wedeberg's Will" as the decedent's intended signature. Their theory begins with the case of *Conway v. Conway* (1958), 14 Ill. 2d 461, 153 N.E.2d 11. In that case a document bearing the signature of the decedent at the end was denied probate by the trial court. One of the witnesses listed in the will testified he signed as a witness one day before the date the will stated it was executed. Both witnesses testified that when they signed as witnesses, they could not see the decedent's name on the will because of the way he had folded the document. Neither testified that they saw the decedent sign the document, and neither testified he stated the signature was his. Nevertheless, the supreme court reversed, directing the trial court declare the document a valid will.

The *Conway* court placed great emphasis upon the fact that the purported will contained an attestation clause duly signed by the attesting witnesses which set forth compliance with all of the requirements of section 43 of the then Probate Act (Ill. Rev. Stat. 1957, ch. 3, par. 194), which contained provisions very similar to section 4—3 of the Act. The court stated:

> "The probate of a will cannot be made to depend upon the recollection or veracity of subscribing witnesses, for if it were necessary for them to remember and testify to the fact that all the prescribed formalities were in fact complied with very few wills could be upheld. The law wisely requires such instruments to be executed and attested with precautions which will usually guard against fraud, and if the attestation clause shows on its face that all the forms required by law have been met, and the signatures on the instrument are admittedly genuine, the presumption of due execution must prevail unless clear and affirmative proof shows the contrary. If it is merely doubtful from the evidence whether the requirements have been complied with, the presumption arising from the attestation clause is not overcome." *Conway*, 14 Ill. 2d at 466-67, 153 N.E.2d at 14.

The other case relied upon by the proponents of the 1988 instrument is *In re Estate of Carroll* (1989), 192 Ill. App. 3d 202, 548 N.E.2d 650, which concerns facts more nearly like those here. There, the purported will was on a printed form containing blanks, some of which had been filled in. The heading stated " 'LAST WILL AND TESTAMENT.' " (*Carroll*, 192 Ill. App. 3d at 204, 548

N.E.2d at 651.) The only mention of the name of the decedent was in the first line after the heading which stated " 'I, Genevieve B[.] Carroll, of ***, declare this to be my last WILL and TESTAMENT ***.' " (*Carroll*, 192 Ill. App. 3d at 205, 548 N.E.2d at 651.) Presumably, the name was written in the hand of the decedent. None of the three witnesses to the document could remember the details of the execution of the document. The circuit court denied probate of the instrument.

The appellate court in *Carroll* reversed, relying in part upon the decision in *Conway* and finding the circuit court decision contrary to the manifest weight of the evidence. The *Carroll* document, although not signed in the usual place for a testator to use, contained a fully executed attestation clause, which stated:

> " 'This instrument was, on the date thereof, signed, sealed, published and declared by the Testator as and for her Last Will and Testament, in our presence, who at her request and in her presence and in the presence of each of us, have subscribed our names hereto as witnesses thereof. And do hereby certify that at the time of the execution thereof the Testator was of sound and disposing mind and memory.' " (*Carroll*, 192 Ill. App. 3d at 205, 548 N.E.2d at 651.)

The appellate court deemed the execution of this clause was *prima facie* evidence of the proper execution of the will, including the signature.

The *Carroll* court further reasoned that the format of the document before it indicated that the decedent intended the placement of her name in the first line to constitute her signature. As indications of that intent, the court noted (1) the statement in the attestation clause that the decedent had declared the instrument to be her will; (2) the title stating " 'LAST WILL AND TESTAMENT' "; (3) the direction to pay debts and funeral expenses; (4) the provision for gifts; (5) the naming of an executor; and (6) a provision prior to the attestation clause wherein the form stated " 'IN WITNESS WHEREOF I have hereunto set my hand and seal' " (*Carroll*, 192 Ill. App. 3d at 206, 548 N.E.2d at 652), with a blank left for the date. *Carroll*, 192 Ill. App. 3d at 205-06, 548 N.E.2d at 651-52.

■ The facts in this case differ greatly from those in *Carroll*. Here, the document contained no attestation clause giving rise to a presumption of regularity. No statement was made that the decedent was or had set her hand or signature to the document. The only time the decedent's name was used was with reference to whose will it was ("Opal Wedeberg's Will"). This use of the name is

far less indicative of an intent that the name was a signature than the language " 'I, Genevieve B[.] Carroll *** declare this to be my last WILL and TESTAMENT.' " Moreover, the *Carroll* opinion does not mention *Hoffman*. The latter opinion makes clear that statements by a purported testator that a document is intended as his or her will are not evidence that by writing his or name on the document he or she intended that writing to be a signature to the instrument. To the extent that *Carroll* diverges from the holding in *Hoffman*, we must follow *Hoffman*.

Following the holding in *Hoffman*, we find no circumstances which indicate that when the decedent headed the 1988 instrument with the words "Opal Wedeberg's Will" she intended those words or the first two of them to constitute her signature to the document. The indications are even weaker here than in *Bamberger*, where the decedent's name had been written by him in the declaration of some gifts.

In addition to relying upon the failure of the 1988 document to meet the signature requirements of section 4—3 of the Act, the proponents of the 1980 instrument as the only will of decedent further maintain the 1988 document was also not shown to be properly attested. Because of our decision in regard to the signature, we need not pass on the attestation issue. For the same reasons we need not pass upon possible problems arising from post-execution alteration of the 1988 document. We reverse the judgment appealed and remand to the circuit court with directions to enter summary judgment finding the 1980 document together with its codicil of the same date is the last will and testament of Opal Wedeberg, deceased.

Reversed and remanded with directions.

STEIGMANN and KNECHT, JJ., concur.